# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

AUGUST DEKKER et al.,

       Plaintiffs,

v.                                        CASE NO. 4:22cv325-RH-MAF

SIMONE MARSTILLER et al.,

       Defendants.

_____/

## ORDER DENYING A PRELIMINARY INJUNCTION

The State of Florida recently adopted a rule barring Medicaid payment for specific categories of treatment for gender dysphoria: puberty blockers, hormone therapy, and surgeries. The plaintiffs assert the rule is unconstitutional, violates the Affordable Care Act's nondiscrimination provision, and violates the federal Medicaid statute. The plaintiffs have moved for a preliminary injunction based only on the Constitution and ACA, not based on the Medicaid statute. This order confirms and briefly summarizes the ruling announced on the record at the conclusion of a hearing on the motion.

I

Medicaid is a jointly funded federal-state program that provides medical care for patients of limited economic means. *See Harris v. James*, 127 F.3d 993, 996 (11th Cir. 1997). Federal law makes some services mandatory but allows states to "place appropriate limits" based on "such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d); *see also Rush v. Parham*, 625 F.2d 1150, 1156 (5th Cir. 1980). States may "set reasonable standards" for "medical necessity." *Garrdio v. Dudek*, 731 F.3d 1152, 1155 (11th Cir. 2013).

Exercising this authority, Florida has long barred payment for physician services that are "clinically unproven [or] experimental." Fla. Stat. § 409.905(9). If there is a difference between "clinically unproven" and "experimental," it makes no difference for purposes of this order. For convenience, when discussing the Florida statute, this order uses the term "experimental," without also referring to "clinically unproven." This is consistent with the way the parties have briefed the issues.

The statute is unquestionably valid, at least on its face. The controlling question in this litigation is whether applying the provision to the gender-dysphoria treatments at issue violates the United States Constitution or federal law.

II

As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest. *See*, *e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

III

In *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980), a Medicaid beneficiary challenged Georgia's refusal to pay for gender-affirming surgery. The state said the surgery was experimental and thus not medically necessary. The district court ruled that the surgery was necessary because the plaintiff's physician said so—that the state was bound by the physician's opinion. Not surprisingly, the Fifth Circuit disagreed.

The Fifth Circuit remanded the case to the district court to determine two things: first, whether Georgia had a policy prohibiting payment for experimental services when it first rejected the plaintiff's application; and second, if it did, "whether its determination that transsexual surgery is experimental is reasonable." *Id*. at 1157. The court said this second question—whether the state's determination

"is" reasonable, would be controlled on remand by "current medical opinion, regardless of the prevailing knowledge at the time of plaintiff's application." *Id*. at 1157 n.13.

*Rush* is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). The remand instructions were the Fifth Circuit's square holding. The case dealt only with surgery, not puberty blockers or hormone therapy, but the same principles apply. The decision thus sets out a roadmap for further proceedings in this court—the same roadmap the district court was required to follow in *Rush*.

There is, however, one difference. This record provides no basis to doubt that Florida prohibited payment for experimental services when the plaintiffs submitted their applications. This was the first of the two questions on remand in *Rush*. The second question thus will be controlling here: whether, based on current medical knowledge, the state's determination that these treatments are experimental is reasonable.

If the state has reasonably determined these treatments are experimental, the refusal to pay for them under the Medicaid program is unconstitutional or violates the ACA nondiscrimination provision only if the state pays for other, equivalently experimental treatments. The plaintiffs will face a difficult task to show that any other treatment is equivalently experimental, because it will be difficult to establish

two things: first, an equivalence between any Florida-Medicaid-eligible service and these treatments for this diagnosis, or second, an equivalence of current medical knowledge between these treatments and any Florida-Medicaid-eligible service. The plaintiffs' suggestion that their diagnoses can be ignored so that equivalence can be established merely by showing that the same procedures are provided for other diagnoses will not do—a treatment that is well established in one circumstance may be experimental in another. The record does not show that the plaintiffs are likely to prevail on this issue.

If, on the other hand, the state has not reasonably determined the treatments are experimental, the state will be required to pay for the treatments under the Medicaid program, and there will be no need to reach the constitutional issue. *See generally Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345-46 (1936) (Brandeis, J., concurring) (setting out fundamental principles of constitutional adjudication, including that, "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it' ") (quoting earlier authorities in part); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."), *quoted with approval in Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1316-17 (11th Cir. 2019); *Hayburn's Case*, 2 U.S. 408

(1792) (forbidding federal courts from rendering advisory opinions or making determinations that are subject to revision by the executive branch).

In short, the case is likely to rise or fall on the Medicaid claim. The plaintiffs have not moved for a preliminary injunction on that claim. They have not shown a likelihood of success on the merits on the constitutional and ACA claims, because it is likely that the plaintiffs will lose those claims (if they lose the Medicaid claim) or that the other claims will not be reached (if the plaintiffs win the Medicaid claim).

IV

An equally important basis for denying the plaintiffs' motion is that they have not shown they will suffer irreparable harm in the absence of a preliminary injunction. This is so for two reasons.

First, the record does not include medical testimony that the plaintiffs need the treatments at issue and will suffer irreparable harm if it is not provided before the scheduled trial. A factfinder could perhaps conclude, from the plaintiffs' own testimony, that they will suffer irreparable harm, but I do not make that finding on that basis at this time.

Second, the defendants have represented, in opposition to the plaintiffs' motion, that Florida law does not flatly prohibit Medicaid payment for the treatments at issue, and that instead, the plaintiffs may be able to obtain payment

under Florida Statutes § 120.542. That statute allows an agency to grant a variance or waiver from an otherwise uniformly applicable rule. The defendants equated this to the emerging approach in some European countries, where treatment of this kind is available, just not as readily available as in years past. If a plaintiff qualifies for a variance under § 120.542—as one or more of them well might if, as the defendants have said, the challenged rule mirrors the cited European approach— the plaintiff will not suffer irreparable harm. The defendants' representation is a basis for this order denying a preliminary injunction and will bind the defendants as the case goes forward.

V

A note should be added about what this case does *not* involve. The question presented is only whether Medicaid must *pay* for the treatments at issue. The case does not involve the markedly different question whether a state could *prohibit* treatments of this kind. Florida does not prohibit the treatments.

VI

The bottom line is this. The Medicaid claim is likely to control the outcome of this litigation. The plaintiffs have not moved for a preliminary injunction on that claim. And they have not established that they will suffer irreparable harm if a preliminary injunction does not issue, partly because they have not sought a variance or waiver.

For these reasons and those set out on the record at the conclusion of the preliminary-injunction hearing,

IT IS ORDERED:

The preliminary-injunction motion, ECF No. 11, is denied.

SO ORDERED on October 24, 2022.

                                       s/Robert L. Hinkle
                                       United States District Judge